PEOPLE v. OVERTON.

1. ARREST—PROBABLE CAUSE.

Whether an officer has reasonable cause to believe person arrested committed a felony must depend upon the situation in the particular case.

2. SAME—BURGLARY—SIMILARITY OF TIRE MARKS.

After notification of burglary, officers' arrest of motorist seen in vicinity of the crime whose tire marks in the snow were similar to those found near scene of crime at 4:30 in the morning and search of the car *held*, legal as made with good reason to believe that accused had committed a burglary (3 Comp. Laws 1929, § 17149 [c], as amended by Act No. 84, Pub. Acts 1935).

3. SAME—SEARCH OF AUTOMOBILE.

Where an arrest of a motorist is proper, the search of the automobile is lawful (3 Comp. Laws 1929, § 17149 [c], as amended by Act No. 84, Pub. Acts 1935).

4. CRIMINAL LAW—POSSESSION OF GAMBLING MATERIALS—EVIDENCE—SEARCH OF ROOM.

In prosecution for illegal possession of memoranda of bets, gambling materials found in defendant's room by police officer given permission by accused to go to room for key of locked compartment of automobile driven by accused at time of arrest on suspicion of burglary, were admissible in evidence (Act No. 328, § 306, Pub. Acts 1931).

5. GAMING—GREAT WEIGHT OF EVIDENCE.

In prosecution for illegal possession of memoranda of bets, conviction *held*, not against great weight of evidence (Act No. 328, § 306, Pub. Acts 1931).

SHARPE and WIEST, JJ., dissenting.

Appeal from Kalamazoo; Weimer (George V.), J. Submitted January 11, 1940. (Docket No. 123, Calendar No. 40,658.) Decided April 1, 1940.

John Overton was convicted of possession of memoranda of bets. Affirmed.

*R. M. VanDyne* and *Charles Pratt,* for appellant.

*Thomas Read,* Attorney General, *Edmund E. Shepherd,* Assistant Attorney General, and *Paul M. Tedrow,* Prosecuting Attorney, for the people.

BUSHNELL, C. J. Defendant Overton waived a jury trial and was found to be guilty. He was granted leave to appeal from the sentence imposed by the circuit court. Overton was charged with having in his possession memoranda of bets in violation of Act No. 328, § 306, Pub. Acts 1931 (Stat. Ann. § 28.538), which reads:

"All policy or pool tickets, slips or checks, memoranda of any combination or other bet, manifold or other policy or pool books or sheets, are hereby declared a common nuisance and the possession thereof a misdemeanor, punishable by imprisonment in the county jail not more than one year or by a fine of not more than five hundred dollars.

"The possession of any such articles, or of any other implements, apparatus or materials of any other form of gaming, shall be *prima facie* evidence of their use, by the person having them in possession, in the form of gaming in which like articles are commonly used. And such article found upon the person of one lawfully arrested for violation of any law relative to lotteries, policy lotteries or policy, the buying or selling of pools or registering of bets or other form of gaming shall be competent evidence upon the trial of an indictment to which it may be relevant."

Overton claims that he was unlawfully arrested and that his personal property was unlawfully

searched and seized. He also insists that the verdict of the court was against the great weight of the evidence and contrary to law.

About 4:30 o'clock in the morning of January 3, 1939, two police officers of the city of Kalamazoo, who were patrolling in a radio cruiser, received information that a restaurant at the corner of North and Walbridge had been burglarized. While en route to this point they saw defendant and another man getting out of a car in front of 425 Walbridge, about two blocks from the restaurant. The investigation made by the officers at the scene of the burglary disclosed that a door had been broken and some property taken. In the quarter-inch snow that had fallen that night they saw tracks made by a car which had well-treaded front and smooth rear tires. About a half hour later, while going south on Walbridge, the officers saw the car driven by Overton pulling away from the curb. They followed him to a driveway in front of 1103 Engleman avenue, where they stopped the car, and one of them examined the tires. The front ones were well-treaded and the rear smooth, and Overton was arrested on suspicion. When they arrived at the police station with their prisoner, the car was searched and the glove compartment found to be locked. Overton denied having the key but said it could be found in a dresser drawer at the Engleman avenue address. The officers went there, did not find the key, but did find, in the dresser drawer, some envelopes and pads bearing the name of the "Yellow Dog" company. They returned to the police station, where Overton still denied possession of the key, but it was found in his vest pocket. The glove compartment in the car was opened and similar 'Yellow Dog" envelopes and pads were found therein. Later, when the officers

carefully examined the tires of Overton's car, they reached the conclusion that the tracks at the burglarized restaurant must have been made by some other car. The envelopes, pads, and other material found in Overton's room and in the automobile were identified by another police officer as those used in connection with the operation of gambling on horse races, commonly known as "numbers" or "policy."

A motion to suppress the seized evidence and the testimony offered at the examination, as well as a motion to quash the information, was denied.

The decisive question on appeal is whether or not the arrest of Overton was legal. 3 Comp. Laws 1929, § 17149, as amended by Act No. 84, Pub. Acts 1935 (Stat. Ann. § 28.874), reads in part:

"Any peace officer may, without a warrant, arrest a person * * * (c) When a felony in fact has been committed and he has reasonable cause to believe that such person has committed it."

In *People* v. *Licavoli,* 245 Mich. 202, the court said:

"The rule is pretty well settled that if an officer believes, and has good reason to believe, that one has committed a felony, or is committing a felony in his presence, he has probable cause, as the term is used, and may arrest without a warrant and search him before confining him in jail."

See, also, *People* v. *Chyc,* 219 Mich. 273; *People* v. *DeCesare,* 220 Mich. 417; *Kratzer* v. *Matthews,* 233 Mich. 452; and *People* v. *Allen,* 240 Mich. 491.

Whether an officer has reasonable cause to believe the person arrested committed a felony must depend upon the situation in the particular case. The foregoing facts, when considered together with the ex-

amination of the tires on Overton's car prior to his arrest, would furnish good reason to believe that he had committed the burglary. The arrest was legal.

The legality of the search of a vehicle in which an arrested person is riding is well settled. *People* v. *Wallace,* 245 Mich. 310, and *People* v. *Davis,* 247 Mich. 536. See, also, cases cited in 39 A. L. R. p. 818, note.

The gambling materials found in defendant's room were properly admitted under the testimony of the officer that he was given permission by Overton to go to the room for the purpose of getting the key for the locked compartment in the car, the officer testifying that Overton said, ''The key is in my dresser drawer in my room. That is where you will find it.''

The conviction is not against the great weight of the evidence. The sentence is affirmed.

Potter, Chandler, North, McAllister, and Butzel, JJ., concurred with Bushnell, C. J.

Sharpe, J. (*dissenting.*)  I am not in accord with the views of Chief Justice Bushnell. The sole question is: Did the police officers have reasonable cause to believe that respondent had committed a felony at the time of his arrest?

Respondent was arrested in front of his home on the morning of January 3, 1939. About 30 minutes before the arrest, the arresting officers had received a radio call of a breaking and entering of a restaurant about two or three blocks distant from where the police first observed respondent. At the time of the arrest, the police had received no information connecting respondent with the breaking and entering or any other crime or misdemeanor.

Officer Davis testified as follows:

"*Q.* Now then, this man was arrested strictly upon general suspicion, wasn't he? * * *

"*A.* Yes. * * *

"*Q.* Did you find anything to connect him with this breaking and entering?

"*A.* No.

"*Q.* And at that time in your presence, this man had not committed any one single act that would warrant you in arresting him? * * *

"*A.* No, not in our presence. * * *

"*Q.* Officer, you were just on a general searching expedition after you received this report, isn't that right?

"*A.* We were suspicious of anybody that might be out around at that time of night."

Officer Sackett testified:

"*Q.* Had you any complaint from any source to the effect that this car had been stolen?

"*A.* No.

"*Q.* Then you were not conducting any investigation with reference to the automobile at the time you accosted him?

"*A.* We were investigating for anything we could find."

When the officers searched respondent's automobile they did not know what they were looking for. Respondent was arrested on general suspicion, but mere suspicion without cause is insufficient to justify an arrest. See *People* v. *Miller,* 245 Mich. 115. It is also a principle of law that the arresting officer must have reliable information connecting the defendant with the commission of a crime before his arrest is justifiable.

In *People* v. *Kamhout,* 227 Mich. 172, we said:

"There must be no misunderstanding on the part of officers as to the right of search and arrest under

our holdings.    They have no right to stop and search an automobile or other conveyance for the purpose of ascertaining whether it is being used as a means of transporting liquor illegally unless they have such reasonable grounds of suspicion as induce in them, and as would induce in any prudent man, an honest belief that the law is being violated.''

In the case at bar no such grounds existed.    The slightest examination would have disclosed that the car used in the robbery was not the car used by respondent, nor did the police have any right or authority to search the house in which defendant lived. They, the police officers, were given permission by respondent to search in the bureau drawer in his room for a key to unlock a compartment in the automobile.    This permission did not permit the officers to search for anything other than the key.    See *People* v. *Conway*, 225 Mich. 152.    It is unnecessary to cite authority to establish the principle that evidence searched for and seized by a trespassing officer may not be used against its owner.

The conviction should be reversed and the respondent discharged.

Wiest, J., concurred with Sharpe, J.