UNITED STATES v. ALBERTI et al.

United States District Court
S. D. New York.
Jan. 20, 1954.

172

J. Edward Lumbard, U. S. Atty., New York City, Lawrence U. Costiglio, Asst. U. S. Atty., New York City, of counsel, for United States.

Matthew H. Brandenburg, New York City, Ralph J. Barra, New York City, of counsel, for defendant Andrew Alberti.

DIMOCK, District Judge.

This is a motion under rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C., for the return of certain documents and their suppression as evidence on the ground that they were illegally seized without a search warrant.

The Government concedes that the search and seizures complained of were carried out without a search warrant but argues that they were lawful because incident to a lawful arrest. Defendant contends that, although his arrest was lawful, the search of his apartment and particularly of the bedroom from which most of the seizures in issue resulted was unreasonable and, therefore, in violation of the Fourth and Fifth Amendments of the United States Constitution. Defendant further contends that the seizures in issue which were made on the night of his arrest were based on information gained from a previous illegal search of his apartment and that the evidence should therefore be suppressed as the "fruit of a poisonous tree." The Government admits that a federal narcotics agent, who searched defendant's bedroom on the night of his arrest, had entered defendant's apartment two months earlier without his knowledge or consent and without a search warrant but argues that the search and seizures in issue did not result from the earlier illegal search and therefore were not tainted by it.

Since I conclude that, apart from the earlier illegal search, the search and seizures in issue were unreasonable, it is unnecessary for me to decide the effect of prior search.

The Fourth Amendment declares that: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Since the particular circumstances of the case are crucial in the determination of reasonableness, I set forth the facts in considerable detail.

What occurred on the night of the arrest and search is sharply contested. A hearing was held at which the defendant, his wife and six narcotic agents, five of whom were present that night, testified.

The following undisputed facts emerged from the testimony. On the night of April 23, 1953, the defendant and his wife drove their car into the garage adjoining the apartment house in which they reside. As the defendant was about to park the car, three narcotics agents approached, identified themselves, and ascertained that he was Andrew Alberti. Two of the agents had unconcealed pistols. After the car was parked, a fourth agent arrived. Mrs. Alberti suggested that she go to the Alberti apartment alone to discharge the baby sitter. This idea was rejected by the agents. They all proceeded then from the garage through a rear corridor to the Alberti apartment on the first floor of the adjoining building. They all entered the four-room apartment, and remained in the foyer dining room until the baby sitter had been discharged. Then one of

the agents accompanied defendant to the living room where they remained during most of the time spent in the apartment. The defendant's bedroom was carefully and systematically searched by two of the agents in the presence of Mrs. Alberti with some assistance from a third agent who arrived later. Evidently, the other rooms were cursorily examined by the other agent.

Defendant was arrested that night for conspiring to violate the federal narcotics laws at some time before his bedroom was searched. Where the arrest actually occurred, whether in the garage, or in the Alberti apartment was sharply disputed at the hearing. The story of the Government agent who talked to defendant in the garage was in substance as follows: When they stopped defendant in the garage, an agent told him that they had a confidential matter to discuss with him and asked him to come downtown. Defendant asked whether they could talk in the garage. When the agent objected defendant said, "Well, how about coming upstairs," to which the agent assented. Defendant's wife objected, suggesting, as I indicated above, that she go up alone first. The agent answered, according to his own testimony: "That won't be necessary. We will all go up together."

Thus the Government contends that no arrest took place in the garage, and further that the agents entered the Alberti apartment on the invitation of defendant.

The Government's story of the arrest continues as follows: A few minutes after the baby sitter had left, the agent who had the warrant of arrest went into and living room and "engaged in conversation with" defendant. Again, defendant was informed: "It is a very serious matter, quite confidential." Defendant went into the master bedroom with the agent, and, in the bedroom, the agent told him that a warrant had been issued for his arrest, and offered to show it to him. Then, according to the agent's testimony, the following conversation took place on which the Government relies

for consent to the subsequent search and seizures. "I [the agent] told him that we intended to search the apartment, and I asked if he [defendant] had any objection. He said, 'No, go ahead. The place is yours.' "

On the basis of the facts and circumstances revealed by the Government's own story, the search was unreasonable and therefore illegal.

■■ The failure to obtain a search warrant where practicable does not render a search unreasonable when the premises searched are under the control of the defendant and the search is reasonably incident to a valid contemporaneous arrest. United States v. Rabinowitz, 339 U.S. 56, 61, 70 S.Ct. 430, 94 L.Ed. 653. On the other hand, when the warrant of arrest is deliberately used as a substitute for a search warrant, as it was here; where a man is lured to his apartment on false pretenses so that the technical arrest may take place there for the purpose of making the search an incident of the arrest, I cannot so ignore the realities of the situation as to call such a search a reasonable incident of the arrest. Cf. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374; United States v. Lefkowitz, 285 U.S. 452, 467, 52 S.Ct. 420, 76 L.Ed. 877. There was no reason that I can think of for failing to execute the warrant of arrest in the garage, except that, as the Government seems to concede, the search of the apartment could not have been justified as reasonably incident to an arrest in the garage. Instead, according to their story, the agents misrepresented their purpose to defendant. They told him that they wanted to discuss a serious and confidential matter with him although in fact most, if not all, of them knew that they were to arrest the defendant that night. That the "invitation" which defendant extended, after they rejected the garage as an appropriate place for discussion, was not his own spontaneous inspiration is corroborated by the fact that the fifth agent arrived later at the Alberti apartment, apparently according to plan, to assist with the search.

Indeed, the fact that the agent with the arrest warrant took defendant into the bedroom, the room in which the intensive search was conducted, to "make the arrest", for the only time during the course of the evening that defendant was permitted in that room, is further evidence that the "arrest" was calculated to provide legal justification for the search.

 Furthermore, the search itself was of a type which has always been held unreasonable, general and exploratory, a rummaging through the closets and dresser drawers of the bedroom for evidence. See United States v. Lefkowitz, supra, 285 U.S. at pages 465, 466, 52 S. Ct. 420. It is not so much the thoroughness of the search as the impropriety of its object which renders it unreasonable. Here, by the agents' own testimony, the primary object of the search was to uncover documentary evidence and, in fact, the property which was seized was documentary evidence, except for a shopping bag which was not even evidence. Mere evidence of crime, as distinguished from the fruits or instruments of crime, may not be sought with or without a search warrant. United States v. Lefkowitz, supra, 285 U.S. at pages 464–465, 52 S. Ct. 420. Thus the search in issue falls squarely within the situations specifically excepted from approval in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, the case on which the Government heavily relies. In the opinion in the Harris case, supra, 331 U.S. at pages 153–154, 67 S.Ct. at page 1102, the following distinction was drawn:

"Nor is this a case in which law enforcement officers have entered premises ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for merely evidentiary materials tending to connect the accused with some crime. Go-Bart [Importing] Co. v. United States, supra; United States v. Lefkowitz, supra. * * *

"Furthermore, the objects sought for and those actually discovered were properly subject to seizure. This Court has frequently recognized the distinction between merely evidentiary materials, on the one hand, which may not be seized either under the authority of a search warrant or during the course of a search incident to arrest, and on the other hand, those objects which may validly be seized including the instrumentalities and means by which a crime is committed, the fruits of crime such as stolen property, weapons by which escape of the person arrested might be effected, and property the possession of which is a crime. * * * Certainly this is not a case of search for or seizure of an individual's private papers * *."

 Finally, I turn to the question of consent. The right given by the Fourth Amendment is a personal right which may be waived by the defendant. Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; Zap v. United States, 328 U.S. 624, 628, 66 S.Ct. 1277, 90 L.Ed. 1477. Consent to a search by Government officers after an arrest is not, however, to be lightly inferred. Application of Fried, D.C.S.D.N.Y., 68 F. Supp. 961, 964, affirmed in part and reversed in part on other grounds, 2 Cir., 161 F.2d 453, 1 A.L.R.2d 996, certiorari denied 331 U.S. 858, 67 S.Ct. 1751, 91 L. Ed. 1865. See Karwicki v. United States, 4 Cir., 55 F.2d 225; United States v. Marra, D.C.W.D.N.Y., 40 F.2d 271. I do not find the voluntary and deliberate relinquishment of a known right which would constitute a waiver of defendant's constitutional right not to have his home and personal papers searched unreasonably. Cf. Nueslein v. District of Columbia, 73 App.D.C. 85, 115 F.2d 690, 694.

At the hearing, the "arresting" agent testified, as I have indicated above, that, in response to his statement of his intention to search and his question whether defendant "had any objection," defendant replied: "Go right ahead. The place is yours." In his affidavit, the same agent attributed to defendant a somewhat less generous response: "Sure,

go ahead." Defendant has consistently denied any such conversation.

Even if I accept the Government's story that such words were uttered by defendant, the manner and intonation of their utterance is of great significance in determining whether defendant was voluntarily consenting to an act which he knew he was not compelled to agree to. Here, defendant, who was under arrest, whose apartment was occupied by five agents, some of them obviously armed, who had two children asleep in another bedroom, was informed that the agents intended to search. Under such circumstances, I find that his acquiescence was in the nature of resignation rather than consent. This conclusion is reinforced by defendant's demeanor at the hearing. His manner was that of a man who does not yield his rights unless compelled to do so.

The motion to suppress is, therefore, granted. Since the things seized are at most evidence, and not subject to forfeiture or illegally in defendant's possession, the motion for their return is granted.