Robert Layton ROBINSON, Ann Griffin, Lucille Griffin and Dan Stewart McCollister, Appellants,

v.

UNITED STATES of America, Appellee.

No. 20419.

United States Court of Appeals Fifth Circuit.

Jan. 2, 1964.

Leon A. Wilson, II, Waycross, Ga., for appellants.

Albert Sidney Johnson, Asst. U. S. Atty., Donald H. Fraser, U. S. Atty., Savannah, Ga., for appellee.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and JOHNSON, District Judge.

TUTTLE, Chief Judge.

This is an appeal from the conviction of the appellants under an indictment charging them along with several other defendants, who have not appealed, with conspiracy to violate the Internal Revenue Laws of the United States by accepting wagers and conducting a lottery for profit without paying the occupational tax required by 26 U.S.C.A. § 4411.

The appeals raise three basic contentions. The first is that the trial court erred in not requiring the Government, in response to a motion filed by the appellants, to furnish all of the names of its witnesses, investigating officers and agents, and confidential informers, so as to permit the appellants to examine them in order to determine whether the prosecution was procured or made possible by the use of information or leads obtained by unlawful wire tapping and eavesdropping. The second ground is that certain evidence seized upon the execution of a search warrant was obtained illegally and should have been suppressed upon appellants' motion. The third ground is that as to each of the appellants the evidence was insufficient to warrant submitting the case to the jury. This point is urged even though this Court should decide that all of the evidence received by the trial court was properly admitted.

Since we must reach the question of sufficiency of the evidence and since a discussion of the legal questions will be facilitated by an understanding of the facts in the case, we think it appropriate to make a fairly full statement of the facts. This statement is taken from the brief of the appellants, which the Court finds to be extremely accurate and objective. It must be borne in mind that some of the persons mentioned in the statement were parties to the trial below but are not now before the Court on appeal.

"On February 3, 1962, treasury agents conducted simultaneous raids at the Waycross residence of Ann Griffin, where she, her mother, Lucille Griffin, and Robinson were arrested; at the Waycross residence of Trotter, where he, his wife and Moye were arrested; and at the residences or businesses of the other defendants, except McCollister, in nearby towns, McCollister was arrested in Alabama.

"Each of the raids was conducted under the authority of federal search warrants.

"Various and sundry paraphernalia and records peculiar to a bolita operation were seized in each of the raids.

"Numerous long distance telephone calls were made between the telephone of Ann Griffin and those of Pace, Mary Bell Hall, Sarah Plummer, Samuel E. Neal and R. L. Fields, the latter two of whom were connected with a bolita operation in Brunswick. Numerous such calls were also made between the telephone of Trotter and those of Jordan, Eugene Edwards, Bessie Edwards, Charles James Edwards, Pace, Mary Bell Hall and Sarah Plummer. One such call was made between the telephone of Pace and that of Sarah Plummer.

"Two long distance telephone calls were made from the telephone of Ann Griffin to Robinson at this residence in Fernandina Beach, Florida, two were made from the telephone of Trotter to Robinson, and seven were made from the telephones of Neal and Fields.

"Trotter and Moye had a telephone installed in a cabin in a Waycross motel and in a back room of a Blackshear liquor store from which they conducted their bolita operation in addition to Trotter's residence.

"Robinson registered at various Waycross motels, usually on weekends, in the name of R. L. Robinson and R. L. Layton.

"Surveillance by treasury agents and local officers showed several visits by Robinson to the residence of Ann Griffin and several visits by her to his motel rooms. McCollister was seen visiting Robinson's motel rooms on eight occasions in Waycross and once in Blackshear. McCollister and Robinson were seen together in an automobile on two occasions, once talking with several unidentified negroes and once talking with one unidentified negro. On both occasions, McCollister and Robinson wrote on pads and on one occasion each made a telephone call from a public booth. Robinson was seen to make two other telephone calls from public booths while alone and was seen on one occasion with an unidentified white man and on another occasion with an unidentified white couple. On three occasions McCollister was seen with a paper bag. On one occasion Trotter was seen to drive to Robinson's motel room during the latter's absence, procure some clothing and carry it to Robinson's parked automobile. On another occasion Trotter and Robinson were together in the Blackshear whiskey store.

"The raid on Trotter's residence produced a complete bolita operation. Trotter, his wife, and Moye admitted it was their operation, and the records seized were so captioned.

"The raid on Ann Griffin's residence produced several papers identified as bolita records, all in the handwriting of Ann Griffin. Lucille Griffin attempted to burn a paper identified as a master tally sheet. Robinson was in the house at the time of the raid but both he and Ann Griffin stated that his presence was a personal visit.

"Robinson and his automobile were searched. Found upon his person and seized were the telephone number and address of Frank Pace, the name and telephone number of an unidentified person, and currency. Found in his automobile and seized were a bundle of blank paper similar to that found in Ann Griffin's residence and a bag of coins. Robinson explained that the money was his 'poker money' and the paper was given to him by Ann Griffin for use in his neon sign business.

"In the records seized in the Trotter and Griffin residences were notations corresponding in date and amount, which were explained by the agents as indicating a personal loan from Robinson to Trotter for $350 with $100 paid thereon.

"In the records seized in the Trotter residence was Ann Griffin's telephone number opposite the word 'Lay.'

"The local chief of police, Ray Pope, admitted that he tapped Robinson's telephone in several of his motel rooms in Waycross and also utilized an electronic listening device attached to the air conditioner of his motel rooms.

"A search warrant was executed on McCollister on April 29, 1961, but nothing was found connecting him with the bolita operation.

"No occupation tax was paid by any of the defendants.

"All of the evidence related to the period during which the conspiracy was alleged to have existed."

The foregoing statement of the case must be completed by emphasizing the fact, not mentioned by appellants in their brief, that the police chief stated unequivocally that he did not obtain any information dealing with this prosecution or charge from the electronic listening device and he heard no telephone call or telephone conversation as a result of his attempted tap of Robinson's telephone.

▮ This comment leads us directly to the first argument made by the appellants. This, in substance, is that in a prosecution in which it is conceded that one of the accused parties was unlawfully subjected to having his telephone tapped by a party who later assisted in the prosecution, the court committed error by not requiring a disclosure of the names of confidential informants whose activities may have led to the investigation of the accused even though the evidence introduced by the prosecutor at the trial was admissible because not obtained directly or indirectly from the illegal source.

Appellants rely strongly on the decision of the Court of Appeals for the Second Circuit in United States v. Coplon, 185 F.2d 629, 28 A.L.R.2d 1041, cert. denied, 342 U.S. 920, 72 S.Ct. 362, 96 L.Ed. 688. It is clear that in the Coplon case the trial court cut off cross examination at the time that it appeared that the defense was about to reach an area that might well show that the whole case against Miss Coplon was built up as the result of wire tapping. Such is far from the case here. It is undisputed on the record before us that no lead and no information used at the trial resulted from the efforts by the local police chief to listen either to Robinson's telephone conversations or to conversations within his motel room. This simply becomes then an ordinary case in which the accused seeks to have the name of a government informer. No prejudice is shown to the defendants by reason of their inability to obtain the name of the informer because the informer dealt only with the question of the propriety of the issuing of the search warrant, a subject which we deal with next. See Jones v. United States, 106 U.S.App.D.C. 228, 271 F.2d 494, cert. denied 362 U.S. 944, 80 S.Ct. 809, 4 L.Ed.2d 771.

The next ground asserted is the claim that the search was illegal and its fruits should have been excluded from evidence. The search warrant which was executed on what is called in the Statement of Facts "the residence of Ann Griffin," but which was frequently visited by appellant Robinson, whose automobile was parked in the yard at the time of the search, was entitled "United States of America v. Robert Layton Robinson, 2828 Screven Avenue, Waycross, Georgia." No attack has been made on the search warrant on the ground that it improperly identified the premises as that of Robinson. Nevertheless, both the Government and the appellants speak of the property generally as being that of the residence of Ann Griffin and her mother, Lucille Griffin. The warrant was issued on the basis of an affidavit sworn to by five affiants who identified themselves "as Special Agents, Internal Revenue Service."

The affidavit identified the property sought as "lottery tickets, tally sheets, books of account, adding machines, calculators, money used in the lottery business and the other lottery paraphernalia." Separate affidavits were attached by each of the several officers named, the one by officer Morris stating, "On or about February 9, 1961, the Intelligence Division was furnished with confidential information considered reliable that Robert Layton Robinson of Fernandina Beach, Florida, was operating a 'bolita' wagering business in Waycross, Georgia and vicinity. He was alleged to drive a 1960 grey Oldsmobile bearing a 1960 Florida license, No. 2W54514. * * *" The affidavit then went into great detail with respect to certain specific conduct observed by Morris. It also stated that the number which the informant stated

was assigned to an automobile belonging to Robinson, had been checked by the agents and was found to be issued to such a person. Without detailing the recitations in the affidavit, it is sufficient to say that many details were outlined which corroborated the information which the affidavit stated had been received from reliable sources.

■ A subsequent paragraph in the affidavit stated, "On or about July 8, 1961, we received additional confidential information that Robinson was still engaged in this 'bolita' wagering operation in Waycross, Georgia and vicinity, and that Ann Griffin, a white female, who lived at 903 Lee Avenue, Waycross, was assisting in working with him in this lottery operation. This address, 903 Lee Avenue, was one at which we had previously seen Robinson's 1960 Model Oldsmobile automobile." This confidential information, although not stated to be from persons considered reliable, was also corroborated by the information already in the hands of the affiants and by information they subsequently ascertained, including the fact that Robinson's automobile was frequently seen at 903 Lee Avenue; that the Griffin women later moved to 2828 Screven Avenue and Robinson's automobile was frequently seen at that location also. Without further detailing the contents of the affidavit, we conclude that it was sufficient to warrant the issuing of the search warrant by the United States Commissioner.

■■ This leaves still the question whether the evidence that was found on the person of Robinson and the evidence that was found in his automobile was legally admissible on the trial of the case. We think that in light of the probable cause that appeared from the search warrant itself, the nature of the articles found upon the execution of the warrant, which appellants in their brief concede were "various and sundry paraphernalia and records peculiar to a bolita operation", and the fact that Robinson was present at the place of the search warranted the officers in concluding that he was there present in the commission of the very crime in connection with which the search warrant had been issued. His arrest without a warrant was therefore justified and the search of his person was legally permissible. As to the validity of the search of his automobile, parked in the yard (within the premises known as 2828 Screven Avenue described in the search warrant itself), we conclude that the automobile was sufficiently a part of the crime that was then in process as to warrant the officers in searching it on authority of Carter v. United States, 5 Cir., 231 F.2d 232. Moreover, before searching the automobile, the Federal Agent asked Robinson for his automobile keys, told him he wanted to search it and Robinson gave him the keys without objection. The trial court, we think, was justified in finding that this amounted to consent.

■ With the evidence properly admitted with respect to the Griffin residence and Robinson's automobile, there can be no substantial doubt but that sufficient basis existed for submission of the case to the jury so far as Robinson and the Griffin women are concerned. See Carter v. United States, supra, and United States v. Nicholson, 6 Cir., 303 F.2d 330.

With respect to McCollister, however, things stand somewhat differently. We have carefully considered the evidence that tends to connect him with the other appellants in this case. While it is apparent that they had a number of contacts and while it may well be that McCollister participated with them in some of the business which the jury found the others were engaged in, we think there is no evidence sufficient to warrant submission to the jury of the issue whether he was jointly engaged with them in the business of carrying on the gambling activities without payment of the wagering tax. We think that the evidence connecting him with the other parties is not such as would permit a jury to find him guilty beyond a reasonable doubt.

The judgments as to Robinson, Ann Griffin and Lucille Griffin are, therefore,

affirmed. The judgment against McCollister is reversed and the case as to him is remanded to the trial court for further proceedings not inconsistent with this opinion.