## Commonwealth *v.* McCloskey, Appellant.

Argued September 16, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*James F. McClure, Jr.,* for appellant.

*A. Thomas Wilson,* submitted a brief, for appellee.

OPINION BY CERCONE, J., December 10, 1970:

This is an appeal by Roy Wilson McCloskey from a conviction for violation of Section 4(q) of The Drug, Device and Cosmetic Act.[1] He was found guilty of possession of marijuana after a nonjury trial and was sentenced to three years probation and ordered to pay costs of prosecution and a fine of One Thousand Dollars ($1,000.00).

In this appeal, defendant argues, inter alia, illegality of the search which uncovered the evidence upon which his conviction was based.

Armed with a warrant secured for the purpose of searching defendant's college dormitory room at Bucknell University for marijuana, a narcotics agent and a state trooper proceeded to the University campus and there met with the Dean of Men, John Dunlop. Dean Dunlop and the two officers then met the head resident of Swartz Hall, one Skitmoore, and all four proceeded to Room 373, Swartz Hall, where the defendant lived. There was conflicting testimony as to whether anyone

---

[1] Act of September 26, 1961, P. L. 1664, 35 P.S. §780-4(q).

knocked on the defendant's door. Narcotics agent Garrettson stated there was no knock. All witnesses agree, however, that there was no announcement of identity or purpose prior to entry into the room, which was achieved by use of a passkey possessed by Skitmoore. After entry, defendant was told the purpose of the visit and shown the warrant. When a search of the room revealed a quantity of marijuana, McCloskey was advised of his rights and arrested.

Defendant contends that the entry into his room was improper and that the fruits of the resulting search were therefore inadmissible as evidence against him. We believe the defendant is correct in this claim. Although the evidence procured indicates illegal conduct, an application of the governing rules of law constrains us to hold it was the result of an improper search. The Fourth Amendment prohibition against any unreasonable search and seizure requires that before a police official enters private premises to conduct a search or to make an arrest, he must give notice of his *identity and purpose*, except when exigent circumstances justify the failure to give notice: *Commonwealth v. Newman*, 429 Pa. 441, 240 A. 2d 795 (1968).

Precedent requires us to hold the rule so enunciated in the *Newman* case applies where, as here, defendant's door was unlocked with a passkey without prior announcement. In *Sabbath v. United States*, 391 U.S. 585, 88 S. Ct. 1755, 20 L. Ed. 2d 828 (1968) (entry made by opening unlocked door), the Supreme Court commented: "An unannounced intrusion into a dwelling . . . is no less an unannounced intrusion whether officers break down the door, force open a chain lock on a partially open door, *open a locked door by use of a passkey*, or, as here, open a closed but unlocked door" (Emphasis added) (391 U.S. at 590, 88 S. Ct. at 1758, 20 L. Ed. 2d at 834).

There is no evidence in this case of any exigent circumstances justifying entry into McCloskey's locked room without announcement of identity or purpose. The dormitory room was located on the third floor and there is no evidence of any other exit than the one into the hallway where the agents were standing. There is no evidence that McCloskey had any means inside the room to dispose of the volume of marijuana (five pounds) which the officers expected him to possess. Also, there was no reason to suspect defendant knew of the officers' presence and purpose prior to their entry.

It was the Commonwealth's position that the Fourth Amendment protections do not apply to a search of a college dormitory room. The test to be used in determining the applicability of the Fourth Amendment protections is whether or not the particular locale is one ". . . in which there was a reasonable expectation of freedom from governmental intrusion": *Mancusi v. DeForte,* 392 U.S. 364, 368, 88 S. Ct. 2120, 2124, 20 L. Ed. 2d 1154, 1159 (1968) (large office room shared by the defendant and other union officials). See also *Sabbath v. United States,* supra (apartment); *Stoner v. California,* 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964), rehearing denied, 377 U.S. 940, 84 S. Ct. 1330, 12 L. Ed. 2d 303 (hotel room); and *Katz v. United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (telephone booth). A dormitory room is analogous to an apartment or a hotel room. It certainly offers its occupant a more reasonable expectation of freedom from governmental intrusion than does a public telephone booth. The defendant rented the dormitory room for a certain period of time, agreeing to abide by the rules established by his lessor, the University. As in most rental situations, the lessor, Bucknell University, reserved the right to check the room for

dámages, wear and unauthorized appliances. Such right of the lessor, however, does not mean McCloskey was not entitled to have a "reasonable expectation of freedom from governmental intrusion", or that he gave consent to the police search,[2] or gave the University authority to consent to such search.[3]

The case of *Moore v. Student Affairs Committee of Troy State University*, 284 F. Supp. 725 (M.D. Ala. 1968), relied on by the Commonwealth, is not applicable in that it did not involve a criminal prosecution but merely disciplinary action by the University with penalties imposed on the student by the Student Affairs Committee.

---

[2] Voluntary consent must be proven by clear and positive evidence (*United States v. Smith*, 308 F. 2d 657, 663 (2d Cir. 1962), cert. denied, 372 U.S. 906, 83 S. Ct. 717, 9 L. Ed. 2d 716 (1963)), and the State has the burden of proof (*Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792, 20 L. Ed. 2d 797, 802 (1968)). Waiver of Fourth Amendment rights through consent to a search cannot be lightly inferred. See *Simmons v. Bomar*, 349 F. 2d 365, 366 (6th Cir. 1965); *United States v. Como*, 340 F. 2d 891, 893 (2d Cir. 1965). Every reasonable presumption is against one's waiver of his constitutional rights. *Weed v. United States*, 340 F. 2d 827, 829 (10th Cir. 1965).

[3] In *Stoner v. California*, supra, a hotel clerk allowed the police to search a guest's room, and the Supreme Court there stated: "It is important to bear in mind that it was the petitioner's constitutional right which was at stake here, and not the night clerk's nor the hotel's. It was a right, therefore, which only the petitioner could waive by word or deed, either directly or through an agent." 376 U.S. at 489, 84 S. Ct. at 893, 11 L. Ed. 2d at 860. Many other cases have held that one in the position of a lessor cannot consent to a police search of a tenant's premises, even though the lessor, himself, has a right to enter the room or apartment. See *United States v. Jeffers*, 342 U.S. 48, 72 S. Ct. 93, 96 L. Ed. 59 (1951) and *Commonwealth v. Ellsworth*, 421 Pa. 169, 218 A. 2d 249 (1966) (hotel proprietor let police into a guest's room); *Chapman v. United States*, 365 U.S. 610, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961) and *Cunningham v. Heinze*, 352 F. 2d 1 (9th Cir. 1965), cert. denied, 383 U.S. 968, 86 S. Ct. 1274, 16 L. Ed. 2d 309 (1966) (landlord allowed police search of tenant's room).

Since we hold the search to have been improper, there is no need to comment on defendant's contentions regarding the legality of the warrants. Conviction reversed and sentence vacated.

---

CONCURRING OPINION BY MONTGOMERY, J.:

I join with the majority of my colleagues in the decision that there was an unreasonable search and seizure in this case for the reasons set forth in Judge CERCONE'S opinion; but I also believe that the search warrant was issued without probable cause.

The search warrant was based on an affidavit[1] of Officer Robert E. Garrettson, a narcotics agent for the Commonwealth. The Commonwealth on this appeal has not attempted to dispute that the affidavit was insufficient since it did not contain underlying facts from which the magistrate could find probable cause. See *Spinelli v. United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). However, pursuant to *Commonwealth v. Crawley*, 209 Pa. Superior Ct. 70, 223 A. 2d 885 (1966), affirmed, 432 Pa. 627, 247 A. 2d 226 (1968), at the suppression hearing, the Commonwealth attempted to support the search warrant by introducing the sworn testimony of Officer Garrettson. This testimony revealed that he had informed the issuing magistrate that he had been told by an unnamed narcotics agent in Philadelphia that a Mr.

---

[1] ". . . [O]n or about the 6th day of Oct., 1967, the following goods and chattels, to wit: A quantity of Marijuana were by some person or persons, sent or mailed to one Roy McClouskey [sic], a College student (Bucknell) residing at Room No. 373 Swartz Hall, Bucknell U. Lewisburg, Pa. and that the said goods and chattels, as the complainant has just and reasonable cause to suspect and believe, and does suspect and believe, are concealed in the Room of one Roy W. McClouskey [sic.] at Bucknell U. County of Union and State of Pennsylvania." (Record, 3a).

Phillip Capobianco, who had been arrested on an unrevealed charge, had mailed five pounds of marijuana to the defendant on October 6, 1967, and also had mailed five pounds to another individual at another university.

It is apparent that the probable cause in this case rests on the reliability of Capobianco. There is nothing in the record to demonstrate that his information has been reliable in the past, and the admission of criminal activity in his information cannot supply such reliability. Furthermore, I do not believe that the magistrate should have accepted this information from Officer Garrettson, who had not been in the presence of Capobianco when the statement was made. This "hearsay on hearsay" also cannot be condoned as being derived from the personal observations of one of several officers conducting a common investigation. See *United States v. Ventresca*, 380 U.S. 102, 85 S. Ct. 741, 13 L. Ed. 2d 684 (1965).

Therefore, for these additional reasons, I concur.

------

DISSENTING OPINION BY WRIGHT, P. J.:

I am not in accord with the statement in the majority opinion that a "dormitory room is analogous to an apartment or a hotel room". This appellant signed a room contract which reads as follows: "I, the undersigned, agree to take the room shown on this contract for my own occupancy for the whole school year, in accordance with the rules of the University, paying for same at the rate shown on this contract, I understand that the University reserves the right of inspection of this room and I hereby grant permission for such inspection in accordance with the regular procedures of the University".

After procuring a search warrant, the validity of which is not questioned by the majority, a state trooper and a narcotics agent proceeded to the campus and met

with the Dean of Men. The Dean and the two officers then met the head resident of Swartz Hall, and all four proceeded to appellant's room. One of the four knocked on the door and, when there was no answer, the head resident opened the door with a pass key. Appellant was found on the bed just awakening from sleep. After appellant was advised of his constitutional rights, a search was made which revealed a plastic bag containing marijuana in a desk drawer, an envelope containing marijuana in a closet, some unused marijuana cigarettes in a waste receptacle.

I am of the opinion that a search warrant was not required under the circumstances, and that appellant had no right to regard his room as a place "in which there was a reasonable expectation of freedom from governmental intrusion". Cf. *Mancusi v. DeForte,* 392 U. S. 364, 88 S. Ct. 2120. It is my view that this case is controlled by *Moore v. Student Affairs Committee of Troy State University,* 284 F. Supp. 725, in which no search warrant was obtained. The majority has failed to satisfactorily distinguish this case. I would affirm on the able opinion of President Judge KALP.

WATKINS, J., joins in this dissenting opinion.