Commonwealth *v.* Dressner, Appellant.

Submitted September 16, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Lenard H. Sigal,* for appellant.

*John H. Isom, Mark Sendrow,* and *Steven H. Goldblatt,* Assistant District Attorneys, *Abraham J. Gafni,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., February 27, 1975:

This appeal arises from the lower court's finding appellant guilty of the illegal possession of narcotics, for which a sentence of six to twelve months was imposed. Appellant Dressner now challenges the refusal of the lower court to suppress the evidence produced by the search of his automobile, arguing that the warrantless search was not a product of a valid consent.

In August of 1971, the Internal Affairs Bureau of the Philadelphia Police Department received information from another arrested policeman that appellant, Sergeant Dressner, was involved in the mishandling of confiscated narcotics which resulted in their sale by police to drug addicts. Because of this information, two inspectors for the IAB were sent to Dressner's home

to bring him downtown for questioning. Their superiors also instructed the inspectors to assure that Dressner brought his automobile with him since they had reason to believe he had concealed two packets of heroin in a magnetic key case in his car.

When the inspectors arrived at Dressner's home they found him babysitting his children. After they explained the situation to Dressner, he agreed to drive downtown to answer questions. He then procured the services of a babysitter and drove his car to IAB headquarters.

After some brief questioning, the inspectors asked Sergeant Dressner if he would mind if they searched his automobile. He said he would not mind, and moved his car into the garage area of the building and opened the trunk. After searching the car somewhat less than rigorously, the inspectors were unable to find any contraband. Dressner and the two inspectors then returned upstairs. During this period of time, the IAB determined that they should try another more thorough search of the car. Once again they asked Dressner if he would mind if they searched his car, and once again he consented. Again he drove his car into the garage and unlocked the trunk.

Because it was cluttered with lamp parts and fixtures, the trunk had not been intensively searched the first time. On this second search, however, the inspectors completely emptied the trunk *with the aid of Dressner himself*. One inspector then climbed into the trunk and ran his hand along crevices near the fenders and tail-light assembly. The inspector then felt a plastic bag lodged down in one of the apertures by the taillight. When the other inspector removed the bag, they discovered that it contained 6 bundles—each bundle consisting of twenty-five packets of heroin. Sergeant Dressner was then placed under arrest.

The law has recognized that custody is an important circumstance in determining whether a consent was voluntarily given. See generally Annotation, 9 A.L.R. 3d 858 (1966). Thus, the voluntariness of a custodial consent will not be lightly inferred. *United States v. Ellis,* 461 F. 2d 962 (2d Cir. 1972), cert. denied, 409 U.S. 866. However, despite the fact that the voluntariness of a custodial consent is suspect, no one fact has talismanic significance, and voluntariness may be established by the Commonwealth if all the facts and circumstances indicate that the consent was voluntarily given. *Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). Furthermore, this Court is properly reluctant to examine the facts and circumstances *de novo* without giving due weight to the advantage the hearing court has had by observing the demeanor of the witnesses and the defendant. As some courts have stated with specific regard to reviewing custodial consents: "The trial judge is in a better position to weigh the significance of the pertinent factors than is an appellate tribunal. He has the advantage of seeing and hearing the witnesses so that he cannot only evaluate their credibility but also can gain a 'feel' of the case which the cold record denies to a reviewing court." *State v. King,* 209 A. 2d 110 (N.J. 1965). See also *United States v. Page,* 302 F. 2d 81 (9th Cir. 1962); *United States ex rel. Harris v. Hendricks,* 423 F. 2d 1096 (3d Cir. 1970).

In evaluating the voluntariness of a custodial consent, the courts have sensibly looked at a variety of factors which indicate a voluntary decision by the suspect to forego the letter of his Fourth Amendment rights. Many of those factors are present in the instant case and clearly demonstrate the validity of Dressner's consent herein.

First, it has been frequently held that when a suspect has aided an investigation or search, as by provid-

ing a key, his consent was very likely voluntarily given. *Robinson v. United States,* 325 F. 2d 880 (5th Cir. 1964) ; *United States v. Katz,* 238 F. Supp. 689 (D.C. N.Y. 1965) ; *James v. State,* 223 So. 2d 52 (Fla. 1969) ; *State v. Belk,* 150 S.E. 2d 481 (N.C. 1966) ; *State v. King,* supra.

Second, the education, intelligence and experience of the consenter should be considered, including those characteristics apparent from the defendant's demeanor at the suppression hearing. *United States v. Alberti,* 120 F. Supp. 171 (D.C. N.Y. 1954) ; *United States v. Katz,* supra. Thus, if the defendant's background indicates his understanding of investigating procedures or his understanding of his constitutional rights, the fact that he was in custody when he consented will not receive controlling weight. *Hubbard v. Tinsley,* 350 F. 2d 397 (10th Cir. 1965) (knowledgeable in investigatory procedures) ; *Grillo v. United States,* 336 F. 2d 211 (1st Cir. 1964), cert. denied 379 U.S. 971 (attorney) ; *Tatum v. United States,* 321 F. 2d 219 (9th Cir. 1963) (private investigator).

Third, if the facts indicate that the consenter believed the evidence to be so well concealed that it probably would not be discovered, his consent was probably voluntarily given. *Grice v. United States,* 146 F. 2d 849 (4th Cir. 1945) ; *Application of Fried,* 68 F. Supp. 961 (D.C. N.Y. 1946), rev'd on other grounds 161 F. 2d 453 (2d Cir. 1947), cert. denied 331 U.S. 858. *State v. King,* supra; *Combs v. State,* 206 A. 2d 718 (Md. 1965) ; *Barnes v. State,* 130 N.W. 2d 264 (Wis. 1964) ; *People v. Brown,* 22 Cal. Rptr. 835 (1962) ; *People v. Robinson,* 308 P. 2d 461 (Cal. 1956) ; *People v. Overton,* 291 N.W. 216 (Mich. 1940) ; *State v. McLennan,* 231 P. 718 (Idaho 1925) ; *Davis v. State,* 226 So. 2d 257 (Fla. 1969).

Fourth, the fact of some prior cooperation by the

consenter which produced no incriminating evidence indicates the voluntariness of his consent. *United States v. Katz,* supra.

And finally, a consent will be held valid where it can be shown that the consenter was advised of his constitutional rights prior to giving his consent. *Sleziak v. State,* 454 P. 2d 252 (Alaska 1969), cert. denied 396 U.S. 921; *State v. McPeak,* 90 S.E. 2d 501 (N.C. 1955), cert. denied 351 U.S. 919.

Not one, but all of those factors which indicate the voluntariness of a consent were present in the instant case. The only literal omission was a statement by the inspectors advising Dressner of his constitutional rights. However, Sergeant Dressner was an experienced policeman who doubtless had full knowledge of the constitutional rights which attach to one who has become the focus of a criminal investigation. As the Circuit Court stated in *Rosenthall v. Henderson,* 389 F. 2d 514, 516 (6th Cir. 1968) : "To advise a person with experience or training in this field that he has the right to refuse consent would be a waste of words." See also *Schneckloth v. Bustamonte,* 412 U.S. at 230, n. 12.[1] Indeed, the only factor which tended to in-

---

[1] *Commonwealth v. Cohen,* 221 Pa. Superior Ct. 244 (1972) does not require that Dressner's experience should be disregarded in situations involving consents to searches. The question in *Cohen* was whether *Miranda*-type warnings, admittedly *required* to be given to all other citizens who found themselves in Cohen's circumstances, should also be required to be given to attorneys. Thus, the question there was not the voluntariness or intelligence of Cohen's waiver of certain of his Fifth and Sixth Amendment rights; but rather, whether Cohen, as an attorney, belonged to a class of persons to which the prophylactic rule of the *Miranda* decision did not extend. In the instant case, the Constitution has not been heretofore construed to *require* the provision of advice concerning Fourth Amendment rights. Therefore, the inquiry herein is whether, *in fact,* the appellant's waiver was voluntary and intelligent—

dicate an involuntary consent was the attendant custodial element.[2] In the face of the overwhelming evidence indicating a voluntary consent, it would be gross error for this court to reverse the hearing court's denial of appellant's motion to suppress. In fact, such a result can stand only upon the ground that it is impossible for a custodial consent to be voluntary—a position that no jurisdiction in this country has heretofore taken.

Judgment of sentence is affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

The appellant claims that he is entitled to relief from a criminal conviction of illegal possession of narcotics because the judge at the suppression hearing erroneously denied his motion to suppress physical evidence seized from appellant's automobile.

In August, 1971, the Internal Affairs Bureau of the Philadelphia Police Department ("I.A.B.") was conducting an investigation of the mishandling of narcotics by members of the police department. During the investigation, the police arrested Carl Johnson, a police officer, who alleged that appellant, a fellow officer, had on previous occasions withheld narcotics. Pursuant to his superior's orders to pick up the appellant, Inspector Charles Fragassi and an I.A.B. lieutenant brought appellant to I.A.B. headquarters at 3rd and

---

an inquiry to which the appellant's life experience, intelligence and expertise have obvious relevance.

[2] The argument that Dressner's willingness to cooperate was born of his fear of suspension under the Home Rule Charter, is wholly without support in the record. That provision of the Charter was never mentioned to him, nor does the evidence indicate that Dressner even considered it when he consented. The dissent is speculating when it suggests that the provision affected his decision.

Race Streets in Philadelphia. The officers requested specifically that appellant and the lieutenant drive to headquarters in the appellant's automobile.

Once at headquarters, appellant was placed in an office and advised that Johnson had informed the police about appellant's illegal retention of seized drugs. Thereafter, one of the investigating officers asked appellant whether he would permit a search of his automobile, parked on the street outside of headquarters. Appellant acquiesced in the request. No contraband was found during the initial search. Shortly thereafter, however, appellant was asked whether a further search could be made. Appellant agreed to the request. A complete search of the trunk of the automobile uncovered six bundles, each containing twenty-five bags of heroin. At no point was appellant warned that he was not obligated to consent to the search. Investigating officers made no attempt to obtain a search warrant and the appellee's brief makes no argument that the police had probable cause to acquire a warrant.

Appellant made a pretrial motion to suppress the evidence which was denied by the hearing judge on January 4, 1973. The judge based his decision on the validity of appellant's consent as legal authorization for the search. Appellant was found guilty by jury on May 8, 1973. He subsequently filed Motions for a New Trial and in Arrest of Judgment. The trial judge denied the motions and imposed sentence of six to twelve months on December 18, 1973. This appeal followed.

The law is clear that warrantless searches are per se unreasonable under the Fourth and Fourteenth Amendments of the United States Constitution subject to a few narrow exceptions. *Katz v. United States,* 389 U.S. 347 (1967). One such exception is consent to the search that is freely given. *Davis v. United States,* 328 U.S. 582 (1946). The burden, however, is on the Com-

monwealth to prove by clear and positive evidence that the consent was voluntarily given. *Bumper v. North Carolina,* 391 U.S. 543 (1968); *Commonwealth v. Storck,* 442 Pa. 197, 275 A. 2d 362 (1971); *Commonwealth v. Davenport,* 453 Pa. 235, 308 A. 2d 85 (1973): *Commonwealth v. McCloskey,* 217 Pa. Superior Ct. 432, 272 A. 2d 271 (1970). In a recent case, the United States Supreme Court rejected the position adopted by the Ninth Circuit that "proof of knowledge of the right to refuse consent is a necessary prerequisite to demonstrating a 'voluntary' consent." *Schneckloth v. Bustamonte,* 412 U.S. 218, 232-233 (1973). While not adopting a prophylactic approach similar to the Court's holding in *Miranda v. Arizona,* 384 U.S. 436 (1966), the Court held that "voluntariness is a question of fact to be determined from the totality of all the circumstances, and that the state of a defendant's knowledge is only one factor to be taken into account in assessing the voluntariness of a consent." *Bustamonte,* supra, at 223.

In the instant case, the court below specifically found that appellant was in custody when his consent was elicited. That fact alone is so inherently coercive as to create serious doubt whether the Commonwealth could show that consent was voluntary as judged by the totality of the circumstances.

*Bustamonte* does not compel an affirmance in the instant case. The need to sustain police consensual searches was stated by the Court: ". . . it would be thoroughly impractical to impose on the normal consent search the detailed requirements of an effective warning. Consent searches are part of the standard investigatory techniques of law enforcement agencies. *They normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions." Bustamonte,* supra, at 231-232 (Emphasis supplied). In the instant case, no similar exigency existed to

circumvent the Fourth Amendment requirement of probable cause. The police chose to ignore appellant's rights and to press the advantage that they held over the appellant, who was in custody. The police should have tested their evidence against appellant by subjecting it to the scrutiny of a neutral magistrate.

Further, appellant alleges that he feared retaliatory disciplinary action by his superiors for any failure to cooperate with the investigation. The appellee contends that such action by the police would be unconstitutional, citing several recent United States Supreme Court decisions.[1] At the same time, police have in the past been subjected to the pressure of the "City Charter warnings" based on Section 10-110 of the City of Philadelphia Home Rule Charter that, in effect, tells any police officer that he may claim his privilege against self-incrimination only on pain of losing his position. Hence, appellant confronted by his superiors, fearful that he might be open to disciplinary sanctions, and most importantly, aware that he was in custody, did not freely consent to the search; rather, he merely acquiesced in the inherently coercive situation in which he found himself.

Judgment of sentence should be reversed and the case remanded for a new trial.

SPAETH, J., joins in this dissenting opinion.

---

[1] *Lefkowitz v. Turley*, 414 U.S. 70 (1973) ; *Gardner v. Broderick*, 392 U.S. 273 (1968) ; *Uniformed Sanitation Men Assoc. v. Sanitation Comm'r.*, 392 U.S. 280 (1968) ; *Garrity v. New Jersey*, 385 U.S. 493 (1967). Appellee does not suggest, however, that the appellant was aware of those decisions.