Commonwealth *v.* Woods, Appellant.

Submitted November 17, 1975. Before WATKINS, P.

J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Anthony J. Lalama*, Trial Defender, *John J. Dean*, Chief, Appellate Division, and *Ralph J. Cappy*, Public Defender, for appellant.

*Robert L. Eberhardt* and *Charles W. Johns*, Assistant District Attorneys, *John M. Tighe*, First Assistant District Attorney, and *John J. Hickton*, District Attorney, for Commonwealth, appellee.

OPINION BY CERCONE, J., April 22, 1976:

This appeal arises from appellant Kenneth Woods' conviction, following a non-jury trial, of possession with intent to deliver a controlled substance.[1] Appellant now contends that certain evidence seized as a result of a warrantless search of his automobile should have been suppressed because he did not voluntarily consent to the search.

A few days prior to April 12, 1974, Officer Bernard Ciganek of the Pittsburgh Police Department received

---

1. The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L. 233, No. 64, §13(a)(30), as amended, 35 P.S. §780-113(a)(30) (Supp. 1975-76).

reliable information that there was marijuana and dangerous drugs in the appellant's apartment. Pursuant to this information Officer Ciganek obtained and executed a search warrant for the apartment on April 12, 1974. Although appellant was not home when Officer Ciganek and two fellow officers arrived, appellant's roommate admitted them into the apartment. During the course of their search, which resulted in the seizure of a small quantity of marijuana and related paraphernalia from appellant's bedroom, appellant and another party entered the apartment carrying suitcases. When appellant identified himself he was arrested and given his *Miranda* warnings.

Officer Ciganek, prompted by the fact that appellant was carrying suitcases and that the informant had indicated a larger quantity of contraband would be found, questioned appellant as to whether he owned an automobile. Appellant denied that he owned an automobile even after Officer Ciganek confronted him with several parking tickets which were found in appellant's bedroom. When Officer Ciganek then found an automobile title registered in his name, appellant admitted ownership to a red Volkswagon. Upon completing the search of the apartment, Officer Ciganek asked appellant for permission to search the Volkswagon. When appellant did not respond to this request the officer stated that if appellant did not give his permission, he would procure a search warrant for the automobile. Once again appellant remained silent. Officer Ciganek then instructed his partner to call headquarters and have someone obtain a search warrant. At this point, appellant stated, "Okay, you can search it." Officer Ciganek then took appellant into the room where the other people were, and asked him if he understood the rights he was earlier advised of, and whether he was still granting permission to search his car. Appellant responded affirmatively to both questions.

Just prior to their arrival at the car, appellant told

Ciganek that the contraband was in a duffel bag in the back of the car. Appellant then unlocked the vehicle, pulled back the rear seat, and removed the duffel bag. Subsequent analysis revealed this bag to contain approximately fifteen pounds of marijuana.

Appellant contends that Officer Ciganek's statement that he would procure a search warrant if appellant did not consent to the search, was so implicitly coercive as to render the consent involuntary. We conclude otherwise and therefore affirm.[2]

It is fundamental "that the question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). Moreover, it is the Commonwealth's burden to establish that the consent given was in fact voluntarily given. *Id.; Commonwealth v. Griffin*, 232 Pa. Superior Ct. 163 (1975); *Commonwealth v. Dressner*, 232 Pa. Superior Ct. 154 (1975). The Commonwealth's burden is especially heavy where the consent is obtained while the consenter is under arrest. *Commonwealth v. Griffin*, supra. "However, despite the fact that the voluntariness of a custodial consent is suspect, no one fact has talismanic significance, and voluntariness may be established by the Commonwealth if all the facts and circumstances indicate that the consent was voluntarily given." *Commonwealth v. Dressner*, supra at 157.

In essence, appellant argues that Officer Ciganek's statement precludes any finding of a voluntary consent to the search. We are of the opinion, however, that Officer

---

2. Parenthetically, we note that this appeal does not present the question of whether a warrantless search of appellant's vehicle could be justified under the special principles pertaining to automobile searches, *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed.2d 419 (1970); *People v. Dumas*, 9 Cal. 3d 871, 109 Cal. Rptr. 304, 512 P.2d 1208 (1973).

Ciganek's statement is not conclusive with respect to the ultimate question of voluntariness. Initially, it must be recognized that the Commonwealth need not demonstrate that the consenter was aware of his right to refuse consent. *Schneckloth v. Bustamonte*, supra. Secondly, the issue of voluntariness is a question of fact whose determination rests with the hearing court. And we are, therefore, "properly reluctant to examine the facts and circumstances *de novo* without giving due weight to the advantage the hearing court has had by observing the demeanor of the witnesses and the defendant." *Commonwealth v. Dressner*, supra at 157. Furthermore, other courts have been presented with similar search warrant statements and determined that the consent was voluntary. *United States v. Agosto*, 502 F.2d 612 (9th Cir. 1974); *United States ex rel. Gockley v. Myers*, 378 F.2d 398, 399-400 (3d Cir. 1967); *United States v. MacLeod*, 207 F.2d 853, 854 (7th Cir. 1953); *Gatterdam v. United States*, 5 · F.2d 673, 674 (6th Cir. 1925); *Simmons v. Bomar*, 230 F. Supp. 226, 228 (M.D. Tenn. 1964), aff'd per curiam, 349 F.2d 365 (6th Cir. 1965).

Instantly, the record adequately supports the trial judge's finding of voluntary and effective consent. At the outset it must be emphasized that appellant was advised and reminded of his constitutional rights prior to the request for his consent. In the Third Circuit it appears that this fact alone would compel a finding of voluntariness. In *United States v. Menke*, 468 F.2d 20, 24 (3d Cir. 1972), the court stated: "In [Government of the Virgin Islands v. Berne, 412 F.2d 1055 (3d Cir. 1969)], we held that where a defendant is given the detailed warnings mandated by Miranda v. Arizona ... and thereafter 'voluntarily submits to interrogation and freely offers information on the existence and location of specifically identified evidence, and further agrees to surrender the evidence to the police, fully cognizant of his right to remain silent and fully aware that the information he provides may be used against him, the

seizure of such evidence does not violate the Fourth Amendment. In such a case, the accused, by his words and actions, has abandoned any privacy or security in the location of the evidence.' "

In addition, appellant's active assistance in directing the officers to his automobile and personally retrieving the contraband therefrom, indicates the voluntary nature of his consent. See *Commonwealth v. Dressner*, supra.

Finally, the record is devoid of any indication that Officer Ciganek's conduct was designed to deceive or coerce appellant into consenting to the search. Merely because the officer stated he would secure a search warrant does not vitiate appellant's consent in light of the fact that the officer clearly had the legal right to seek a warrant. See *People v. McClure*, 113 Cal. Rptr. 815, 819, 39 Cal. App. 3d 64, 69 (1974), and cases cited therein. Appellant was simply presented with a choice of consenting to the search or waiting until the police procured a warrant; and there is no evidence that the police did not harbor a good faith belief that a magistrate would act favorably on their request. *People v. McClure*, supra; See also *United States ex rel. Gockley v. Myers*, supra. On these facts, the lower court correctly concluded that appellant's consent was voluntary, and that the evidence obtained during the search of his automobile was admissible at trial.

Judgment of sentence affirmed.

DISSENTING OPINION BY HOFFMAN, J.:

I dissent from the holding of the Majority.

Initially, I continue to adhere to the views which I expressed in *Commonwealth v. Richard*, 233 Pa. Superior Ct. 254, 268, 336 A. 2d 423 (1975) (dissenting opinion by HOFFMAN, J.), and *Commonwealth v. Dressner*, 232 Pa. Superior Ct. 154, 160, 336 A. 2d 414 (1975) (dissenting opinion by HOFFMAN, J.).

Further, the Majority ignores the United States Supreme Court's holding in *Bumper v. North Carolina*, 391 U.S. 543 (1968), which I believe controls the instant

case. In *Bumper*, police gained access to the petitioner's grandmother's home after they claimed to have a search warrant. At the suppression hearing and on appeal, the State attempted to argue that regardless of the validity or existence of the search warrant, petitioner's grandmother freely consented to the search. The Court stated: "The issue thus presented is whether a search can be justified as lawful on the basis of consent when that 'consent' has been given only after the official conducting the search has asserted that he possesses a warrant. We hold that there can be no consent under such circumstances.

"When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." 391 U.S. at 548-49.

I see no difference here. Appellant refused to consent to a search of his automobile, an area beyond the scope of the warrant and an area for which the officer had no probable cause to search. It was only after the officer said that he would procure a warrant that appellant acquiesced and permitted the search that netted contraband. The only difference between the instant case and *Bumper* is that in *Bumper* the police represented that they already had a warrant, while in the instant case, the police claimed that they would procure a warrant. Had probable cause existed to search the automobile, I might view the police action more sympathetically. But the police realized or should have realized that they did not have the requisite probable cause to obtain the warrant. Therefore, they attempted to rely on the false, and obviously coercive, assertion that they would get a warrant if appellant refused to consent. Only after that show of supposed lawful authority did appellant acquiesce in the search. I simply cannot join the Majority's view that appellant's "consent" amounted to a free and

voluntary decision. Under these facts, *Bumper* cannot be distinguished.

Finally, although the United States Supreme Court has held that the Federal Constitution does not require the police to inform an accused that he has the right to refuse to consent to a search, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), I believe that such a holding would be a sound and logical rule. *Johnson v. Zerbst*, 304 U.S. 458 (1938), mandates that a waiver of a constitutional right must be knowing and intelligent. If the constitutional right is one that we as a society truly value, then we further that interest by guaranteeing a meaningful opportunity to exercise that right. New Jersey has recently held that the New Jersey constitution requires a higher standard than the totality of circumstances test announced in *Schneckloth*. The New Jersey Supreme Court held that "the validity of a consent to search, even in a non-custodial situation" depends on the state's "showing that the consent was voluntary, an essential element of which is knowledge of the right to refuse consent." *State v. Johnson*, 68 N.J. 349, 346 A.2d 66, 18 Cr.L.Rep. 2097 (1975). A requirement that the person to be searched must be informed of his right to refuse would guarantee the validity of a consent and facilitate our inquiry on that question.

In the instant case, appellant did not voluntarily consent to the search: he attempted to exercise a right to refuse; however, the police made him believe that his right to withhold consent was meaningless.

The record indicates that appellant's "consent" was merely an acquiescence in the police's assertion that they could legally search his automobile in the immediate future. Because that fact was false, I believe that appellant did not consent to the search, thereby rendering it illegal and requiring that the evidence seized be suppressed and a new trial ordered.

SPAETH, J., joins in this dissenting opinion.