610 A.2d 1013

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Yvonne R. MORGAN.**

Superior Court of Pennsylvania.

Argued Oct. 23, 1992.

Filed June 3, 1992.

146

Syndi L. Norris, Asst. Dist. Atty., Carlisle, for Com., appellant.

Robert J. Mulderig, Carlisle, appellee.

Before WIEAND, MONTEMURO and KELLY, JJ.

KELLY, Judge:

In this appeal we are asked to determine whether it is error to suppress inculpatory statements made by a suspect who has been advised of and thereafter exercises *Miranda* rights in a non-custodial setting. We find that under the

circumstances herein, it was error to suppress the statements and reverse.

## I. FACTS AND PROCEDURAL HISTORY

The trial court set forth its findings as follows:

1. On June 11, 1990, a patrolman of the Mechanicsburg Police Department, by telephone, asked the defendant to stop in the police department to discuss a theft incident at the York Federal Bank located in Mechanicsburg.

2. Defendant arrived with another female employee of the Bank. The patrolman explained generally about his investigation of the theft and told the defendant he wanted to hear her side of the story.

3. The defendant asked if she was under arrest. The patrolman said she was not and that she could leave at any time.

4. The patrolman then gave defendant her *Miranda* warnings,. She said that she understood and she signed a written waiver of her *Miranda* rights. A copy marked Commonwealth Exhibit No. 1 was introduced.

5. After she signed the waiver, the defendant stood up and said she did not want to talk and wanted to talk to an attorney.

6. The patrolman did not ask any questions at the time, but proceeded to tell the defendant what procedure he would then follow about filing charges before a District Justice and the setting of bail.

7. After the above was done, the defendant said she would give a statement. The officer said he could not talk to her since she said she initially wanted an attorney. The officer also reminded her again that she was free to leave and was not under arrest.

8. She then said that she did not want an attorney and would give a statement, which she did.

9. She was then placed under arrest.

Trial Court Opinion at 1–2. Thereafter, the defendant moved to suppress the statements made. The trial court granted the suppression request.

The Commonwealth has timely appealed the suppression order alleging in good faith that it substantially handicaps its prosecution of the defendant, appellee. The Commonwealth urges that there existed no cause to exclude the statements from trial because the record reveals no evidence that the statements were derived unconstitutionally. After a thorough review of the relevant law and the facts of this case, we agree.

In concluding that appellee's confession was involuntary, the trial court set forth essentially two grounds on which to base its decision. We will address each in turn.

## II. PRESUMPTIVE COERCION

 The first basis for the trial court's decision may be seen from the following excerpt of the trial court opinion:

We are not aware of any factual situation on point in our county or state appellate decisions. Also, we do not wish to extend our appellate case law in holdings that suppress voluntary statements made by criminal defendants. We believe, however, that in this case defendant's due process rights were violated by the officer's actions. First, *we believe that if the police advise a person of their Miranda rights, even in a non-custodial setting, and the person chooses to exercise their right to counsel, then that exercise should be honored by the police and all questioning should cease.* We realize that the police are given little guidance in this area, but *we believe that by taking this preventive measure, both the defendant's due process rights and the police's duty to find the truth will be protected.* Thus, in this case all questioning and conversation should have ceased.

Trial Court Opinion at 8–9 (emphasis added).

The reasoning used in this portion of the trial court's opinion is born, of course, from the doctrine announced in the landmark decision *Miranda v. Arizona,* 384 U.S. 436, 86

S.Ct. 1602, 16 L.Ed.2d 694 (1966). Sometimes called "presumptive coercion," [1] this doctrine's evolution was chronicled most recently by the United States Supreme Court:

> In *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602, 10 ALR 3d 974 (1966), we established a number of prophylactic rights designed to counteract the "inherently compelling pressures" of custodial interrogation, including the right to have counsel present. *Miranda* did not hold, however, that those rights could not be waived. On the contrary, the opinion recognized that statements elicited during custodial interrogation would be admissible if the prosecution could establish that the suspect "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.,* at 475, 16 L.Ed.2d 694, 86 S.Ct. at 1628, 10 ALR 3d 974.
>
> In *Edwards v. Arizona,* 451 U.S. 477, 68 L.Ed.2d 378, 101 S.Ct. 1880 (1981), we established a second layer of prophylaxis for the *Miranda* right to counsel: once a suspect asserts the right, not only must the current interrogation cease, but he may not be approached for further interrogation "until counsel has been made available to him," 451 U.S. at 484–485, 68 L.Ed.2d 378, 101 S.Ct. 1880, [1885]—which means, we have most recently held, that counsel must be present, *Minnick v. Mississippi,* 498 U.S. ——, 112 L.Ed.2d 489, 111 S.Ct. 486 (1990). If the police do subsequently initiate an encounter in the absence of counsel (assuming there has been no break in custody), the suspect's statements are presumed involuntary and therefore inadmissible as substantive evidence at trial, even where the suspect executes a waiver and his statements would be considered voluntary under traditional

---

1. *See Oregon v. Elstad,* 470 U.S. 298, 306 n. 1, 105 S.Ct. 1285, 1292 n. 1, 84 L.Ed.2d 222, 230–31 n. 1 (1985) ("[a] *Miranda* violation does not *constitute* coercion but rather affords a bright-line, legal presumption of coercion, requiring suppression of all unwarned statements.") (emphasis in original); *see also Commonwealth v. Henry,* 410 Pa.Super. 324, 336–41, 599 A.2d 1321, 1327–29 (1991) (Kelly, J., concurring) (distinguishing actually and presumptively coerced confessions for the purposes of the harmless error doctrine).

standards. This is "designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights," *Michigan v. Harvey*, 494 U.S. 344, 350, 108 L.Ed.2d 293, 110 S.Ct. 1176 [, 1180] (1990). The *Edwards* rule, moreover, is *not* offense-specific: once a suspect invokes the *Miranda* right to counsel for interrogation regarding one offense, he may not be reapproached regarding *any* offense unless counsel is present. *Arizona v. Roberson*, 486 U.S. 675, 100 L.Ed.2d 704, 108 S.Ct. 2093 (1988).

*McNeil v. Wisconsin*, —— U.S. ——, ——, 111 S.Ct. 2204, 2208, 115 L.Ed.2d 158, 167–68 (1991).

Instantly, despite its stated reluctance to do so, the trial court, in holding as it did, in fact added a chapter to the "presumptive coercion" chronicle. This we believe was error.

Here, the parties do not contend, the trial court did not find, and the facts do not suggest that appellee was in custody at the time she was questioned by the police officer. The account of the incident given by the police officer, which was in relevant part corroborated by appellee, established that appellee came to and remained at the police station of her own volition. She was repeatedly advised that she was free to leave at any point. She was also advised of her *Miranda* rights while at the police station.[2] Significantly, appellee testified that she had understood that she was not under arrest and that she could have left the police station whenever she liked. N.T. 1/08/91 at 32–33. Under these circumstances, she was not legally in custody. *See Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983); *Commonwealth v. Ellis*, 379 Pa.Super. 337, 355–57, 549 A.2d 1323, 1332 (1988).

**2.** We note that "the mere giving of *Miranda* warnings does not render an investigatory detention custodial." *Commonwealth v. Douglass*, 372 Pa.Super. 227, 249 n. 9, 539 A.2d 412, 423 n. 9 (1988) (plurality) (*citing Commonwealth v. Haggerty*, 495 Pa. 612, 615, 435 A.2d 174, 175 (1981)).

■ Given this, it is clear the holdings in neither *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor its progeny, are applicable herein. It is well settled that, *"Miranda* warnings are necessary only on those occasions when a suspect is undergoing actual 'custodial interrogation.'" *Commonwealth v. Fento,* 363 Pa.Super. 488, 492, 526 A.2d 784, 786 (1987); *see also Oregon v. Mathiason,* 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714; *Commonwealth v. Ellis, supra,* 549 A.2d at 1329 (citing cases). Thus, generally where the suspect is not in custody, the exercise of *Miranda* rights need not be honored. As Judge Wieand recently explained in a case strikingly similar to this, *Commonwealth v. Reed,* 400 Pa.Super. 207, 583 A.2d 459 (1990),

> Instantly, it is clear that appellant was not in custody at the time he made the remark about getting counsel. He had voluntarily agreed to accompany the police to the station for further questioning and he had been informed repeatedly that he did not have to answer questions and was free to leave at any time. Indeed, he had agreed in writing, without coercion, that he understood that he wasn't under arrest, was free to leave at any time, and could refuse to answer questions. When appellant suggested the possible need for a lawyer, Lieutenant Holmberg told him again that he was free to go. Appellant, however, did not leave. Instead, he remained and confessed to the killing. Under these circumstances, appellant's statements were not subject to suppression *merely because the questioning continued after he mentioned the possibility of getting a lawyer.*

*Id.,* 400 Pa.Superior Ct. at 218, 219, 583 A.2d at 464 (emphasis added). Although it failed to command a majority in this Court, this aspect of the *Reed* decision may find adequate support among several members of the United States Supreme Court. A 6–3 majority of that Court recently stated:

> We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation".... If the *Miranda* right to

counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed prior to identification as a suspect. Most rights must be asserted when the government seeks to take action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation *does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.*

*McNeil v. Wisconsin,* —— U.S. ——, —— n. 3, 111 S.Ct. 2204, 2211 n. 3 115 L.Ed.2d 158, 171 n. 3 (1991) (emphasis added); *see also Commonwealth v. Lewis,* 407 Pa.Super. 186, 195–96, 595 A.2d 593, 597–98 (1991) (quoting *McNeil, supra* ).

The only fact that makes this case unique is that here, unlike in any previous case, the police officer took the precautionary step of reading *Miranda* rights to a *noncustodial suspect,* before they were exercised. The trial court held that it was *this* fact that rendered the confession presumptively coerced. Our research has disclosed no appellate court which has held this to be the law. We are neither inclined nor empowered to be the first.

While we share the trial court's legitimate concern that police are provided meaningful guidance in such difficult areas, we are mindful of the pitfalls of announcing additional bright line rules in this regard. Asked recently to give such guidance in a related context, the United States Supreme Court refused, reasoning that,

the police do not need our assistance to establish such a guideline; they are free, if they wish, to adopt it on their own. Of course it *is* our task to establish guidelines for judicial review. We like *them* to be "clear and unequivocal," *see e.g. Roberson,* 486 U.S. at 681–682, 100 L.Ed.2d 704, 108 S.Ct. 2093, [at 2098–2099] but only when they guide sensibly, and in a direction we are authorized to go. Petitioner's proposal would in our view do much more

harm than good, and is not contained within, or even in furtherance of, the Sixth Amendment's right to counsel or the Fifth Amendment's right against compelled self-incrimination.

*McNeil v. Wisconsin, supra*, —— U.S. at ——, 111 S.Ct. at 2211, 115 L.Ed.2d at 171 (holding it inappropriate to rule that police may never initiate questioning of any person in custody who has requested counsel). The same may be true herein.

Ultimately, the question of whether and how far to extend the prophylactic measures first announced in *Miranda* is one of policy. The answer, which has vexed the United States Supreme Court throughout the years, has been a study of compromise, an example of a reslicing of the same Gordian Knot. Even a cursory review of the many relevant decisions of the United States Supreme Court reveals that the appropriate weight to accord the transcending values at stake is in no sense readily discernable. For example, in reversing a conviction based on a confession derived during an eight hour detention, Chief Justice Warren explained that:

> [N]either the likelihood that the confession is untrue nor the preservation of the individual's freedom of will is the sole interest at stake. As we said just last Term, "The abhorrence of society to the use of involuntary confession ... also turns on the deep-rooted feeling that *the police must obey the law while enforcing the law; that in the end life and liberty can be as much endangered from illegal methods used to convict those thought to be criminals as from the actual criminals themselves."* Thus a complex of values underlies the stricture against use by the state of confessions which, by way of convenient shorthand, this Court terms involuntary, and the role played by each in any situation varies according to the particular circumstances of the case.

*Blackburn v. Alabama,* 361 U.S. 199, 207, 80 S.Ct. 274, 280, 4 L.Ed.2d 242, 248 (1960) (*quoting Spano v. New York,* 360 U.S. 315, 320–21, 79 S.Ct. 1202, 1205–06, 3 L.Ed.2d 1265,

1270 (1959) (emphasis added)). Speaking through Justice Jackson, an earlier Supreme Court upheld a conviction based on a confession obtained under somewhat analogous circumstances, stating that:

> We are not willing to discredit constitutional doctrines for protection of the innocent by making of them *mere technical loopholes for the escape of the guilty.* The petitioners have had fair trial and fair review. *The people of the State are also entitled to due process of law.*

*Stein v. New York,* 346 U.S. 156, 196–97, 73 S.Ct. 1077, 1099, 97 L.Ed. 1522, 1548–49 (1953) (emphasis added).

It may well be true that the additional dose of prophylaxis prescribed by the trial court in this case is necessary to better guide police and to more appropriately measure the acceptability of confessions. It may also be true that to again move the bright line of *Miranda* would upset the delicate balance of interests the Court has achieved thus far. Indeed, there is reason to believe that at least two members of the United States Supreme Court will most assuredly dismiss any additional prophylaxis as unwise and unnecessary. Dissenting in *Minnick v. Mississippi, supra,* Justice Scalia expressed his view that:

> Today's extension of the *Edwards* prohibition is the latest stage of prophylaxis built upon prophylaxis, producing a veritable fairyland castle of imagined constitutional restriction upon law enforcement. This newest tower, according to the Court, is needed to avoid "inconsisten[cy] with [the] purpose" of *Edwards'* prophylactic rule, ante, [—— U.S.] at ——, [111 S.Ct. at 487] 112 L.Ed.2d at 498, which was needed to protect *Miranda's* prophylactic right to have counsel present, which was needed to protect the right against *compelled self-incrimination* found (at last!) in the Constitution.

498 U.S. at ——, 111 S.Ct. at 497, 112 L.Ed.2d at 506 (Rehnquist, C.J. joins).

We do not know the ultimate wisdom of the trial court's decision to presume coercion where, as here, *Miranda* warnings have been read, the right to counsel has been

invoked, but questioning did not cease until a lawyer was present, *in a non-custodial setting.*[3] Nor do we know for certain how either the Pennsylvania or the United States Supreme Court will view such a rule. We do recognize, however, that the trial court's decision is based on yet another measure of prophylaxis which the trial court has, for good or bad, added to the *Miranda* "castle." If a majority of either or both of the Supreme Courts chooses to endorse such additional prophylaxis, they may of course do so. In the absence of such Supreme Court guidance, however, we are unwilling to tip the balance of interests thus far achieved by endorsing such a rule ourselves. We hold, therefore, that it is error for a court to consider a confession presumptively coerced merely because a request for a lawyer is not honored where, as here, the suspect was *not* in custody at the time.

## III. ACTUAL COERCION

■ The trial court's alternative grounds for suppressing appellee's inculpatory statements are as follows:

Secondly, and most controlling in this case, *we believe that the officer, by advising her of the possible penalties that she might be subjected to, and by ignoring her request for an attorney, both overstepped his bounds and coerced defendant's statement.* Clearly, it was not the defendant who initiated the conversation after she had indicated that she wanted an attorney; it was the officer who initiated the conversation. *But for the fear of possible penalties and the tone of the officer's voice, we do not believe that the defendant would have given the statement.* We believe, therefore, that the defendant's statement was not made voluntarily and should be suppressed.

Trial Court Opinion at 9. In other words, the trial court determined, the appellant was also *actually* coerced into confessing.

---

**3.** Compare *Minnick v. Mississippi, supra* (custodial setting); *Commonwealth v. Santiago,* 405 Pa.Super. 56, 591 A.2d 1095 (1991) *(en banc)* (same).

The reasoning used in this portion of the trial court's opinion falls under the rubric of confession law which is grounded in the Fourteenth Amendment's "Due Process" clause. In describing the history of this area of law, the Supreme Court has, only relatively recently, clarified the standards by which we must measure claims of actual coercion:

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Just last Term, in *Miller v. Fenton*, 474 U.S. 104, 109, 88 L.Ed.2d 405, 106 S.Ct. 445 [449] (1985), we held that by virtue of the Due Process Clause "certain interrogation techniques, either in isolation or as applied to the unique characteristics of a particular suspect, are so offensive to a civilized system of justice that they must be condemned."

Indeed, coercive government misconduct was the catalyst for this Court's seminal confession case, *Brown v. Mississippi*, 297 U.S. 278, 80 L.Ed. 682, 56 S.Ct. 461. The Court has retained this due process focus, even after holding, in *Malloy v. Hogan*, 378 U.S. 1, 12 L.Ed.2d 653, 84 S.Ct. 1489 (1964), that the Fifth Amendment privilege against compulsory self-incrimination applies to the States.

Thus the cases considered by this Court over the 50 years since *Brown v. Mississippi* have focused *upon the crucial element of police overreaching.* While each confession case has turned on its own set of factors justifying the conclusion that *police conduct was oppressive,* all have contained *a substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.*

*Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 519–20, 93 L.Ed.2d 473, 481–82 (1986) (citations and footnotes omitted, emphasis added).

Measuring the instant case by the *Colorado v. Connelly* standard, we are compelled to disagree with the trial court that appellee was actually coerced into confessing.[4] None of the factors the trial court identified may, alone or in concert, suffice to constitute actual coercion.

First, there is nothing inherently coercive about the fact that the officer warned appellee of her right to remain silent, of the fact that what she said could be used against her, of her right to cut off questioning whenever she so chose to, or of her right to an attorney. The decision to gratuitously apprise appellee of her *Miranda* rights in situations such as this, where the law did not require that such advice be offered, should be applauded, not deterred. This fact suggests that the police officer acted with an abundance of caution to insure that no answer be given without the benefit of a relevant legal education. To find fault with this would surely inhibit such spontaneous tutelage. Neither law nor logic would compel us to do so.

Nor is there anything sufficiently coercive about the fact that the appellee requested a lawyer and was not granted one in this case. It is true that appellee requested an attorney. It is also true, however, that appellee later affirmatively declined to have an attorney present when being questioned. No one held her inside the police station while she changed her mind. No one compelled her to talk with the officer without first gaining the advice of a lawyer. Appellee gave the statement only after being reminded of *Miranda* rights to which, under the circumstances (noncustodial setting), she was not even technically entitled. In light of these facts, it cannot be successfully maintained

---

4. We note that the previous holdings regarding the voluntariness of a confession may well have provided for the consideration of additional factors in the totality of the circumstances. *See generally* Gehring, *Colorado v. Connolly: The Demise of Free Will as an Independent Basis for Finding a Confession Involuntary*, 33 Vill.L.Rev. 895 (1988) (and cases cited therein). However, we view the holding in *Colorado v. Connolly, supra,* as requiring that the focus of our attention be upon the conduct of the police. *See id.* We therefore limit our examination accordingly.

that the failure to cease questioning until an attorney was made available was in any way actually coercive.[5]

Not even the officer's decision to advise appellee of the procedures he would take in filing charges against her can be considered sufficiently coercive. In a related context, this Court has held that the threat to seek or obtain a search warrant, absent indication of intent to deceive, does not vitiate the consent to search a home given thereafter. *Commonwealth v. Woods*, 240 Pa.Super. 72, 368 A.2d 304 (1976); *see also Commonwealth v. Bagley*, 408 Pa.Super. 188, 201, 596 A.2d 811, 817 (1991). The clear import of this holding is that a suspect's decision to waive a constitutional right cannot be made involuntary purely because of the fact that it was preceded by the lawful explanation of the potential legal consequences of failing to do so. Here, as in *Commonwealth v. Woods, supra,* the officer merely described the steps he would take if the suspect did not agree to cooperate at that time. As a matter of law, the officer was perfectly authorized to act in each way he described. Appellee was thus left with a "choice" of cooperating or waiting to see if the officer would in fact take the action he described. *See Commonwealth v. Woods, supra.* Such a choice suggests no coercion. *Id.*

■ Indeed, the only evidence in this record which might indicate that appellee was coerced into making an inculpatory statement is that relating to the "tone" of the officer's voice. According to the appellee, the officer's tone became somewhat "hostile" when describing the procedures he

5. We note that had appellee been in custody at this point, the question of whether it was the police or appellee who reinitiated the interrogation would have been dispositive since police initiated interrogation under those circumstances would have been considered presumptively coercive. *See Minnick v. Mississippi, supra; Commonwealth v. Santiago,* 405 Pa.Super. 56, 71, 591 A.2d 1095, 1102 (1991) (en banc) ("Proof that counsel had been requested, that the police had reinitiated questioning thereafter, and that counsel was not actually *present* during any such interrogation, dispositively establishes that the fifth amendment right to counsel as currently expounded by the Supreme Court was violated."). Since appellee was not in custody at the time of the questioning, however, this determination is unnecessary.

would take in investigationg the crime without her assistance. This evidence is relevant to our inquiry under *Colorado v. Connelly, supra,* as it relates to the degree to which appellee may have been intimidated into confessing without the presence of an attorney. *See and compare Fare v. Michael C.,* 442 U.S. 707, 727, 99 S.Ct. 2560, 2573, 61 L.Ed.2d 197, 214 (1979) ("The officers did not *intimidate* or threaten respondent in any way."). However, tone, and tone alone, cannot constitute constitutionally cognizable coercion. Given the fact that appellee, by her own admission, could have avoided such a presumably undesirable tone simply by walking out the same door of the police station through which she had voluntarily entered only a short time earlier, we believe that the officer's tone of voice falls woefully short of meeting that level of "overreaching" or "oppressive" conduct proscribed in *Colorado v. Connelly, supra.* We are, therefore, convinced that under the current state of confession law, this confession cannot be shown to a product of actual coercion.

## IV. CONCLUSION

For the foregoing reasons, we conclude that the trial court erred in determining that the instant confession was involuntarily made. The law regarding neither presumptively nor actually coerced confessions will support such a finding. Accordingly, we reverse the trial court's order suppressing the appellant's confession.

Suppression order Reversed.

WIEAND, J., concurs in the result.